UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AZUMI LLC and AZUMI, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> LOTT & FISCHER, PL, <br><br> Defendant. | Civil Action No. 1:21-cv-11311 |

**COMPLAINT AND JURY DEMAND**

**Parties, Jurisdiction and Venue**

1. Plaintiff Azumi LLC is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

2. Plaintiff Azumi, Ltd. is a company organized and existing under the laws of England and Wales with its principal place of business in London, United Kingdom.

3. Defendant Lott & Fischer, PL ("L&F") is a professional liability corporation organized and existing under the laws of the State of Florida with its principal place of business in Coral Gables, Florida.

4. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332(a)(3) as the matter in controversy exceeds $75,000 and the controversy is between citizens of different States in which a subject of a foreign state is an additional party.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (2) and (3) as a substantial part of the events giving rise to the claims herein occurred in this judicial district and the property that is the subject of this action is situated in this judicial district.

## Facts

### *Azumi, Ltd.'s 2007-2008 Trademark Negotiations*

6.      Azumi, Ltd. operates a global brand of upscale modern Japanese-style restaurants under the brand name "Zuma."  Zuma restaurants operate in select global cities including, by way of example, London, Rome, New York, Dubai, and Las Vegas.

7.      For over a decade L&F, its name partner Leslie Lott and various of her colleagues, have represented Azumi, Ltd. and its related entities in an ongoing manner in connection with trademark and licensing matters.

8.      L&F is an intellectual property law firm specializing in, *inter alia*, trademark law. L&F represents clients from around the world and throughout the United States and represents itself as having a "global reach."

9.      In 2007 Azumi, Ltd. began opening its Zuma brand restaurants in the United States.  In so doing, Azumi learned that the "ZUMA" trademark for restaurant services in the United States was held by a Boston-based company called B. B. Kitchen, Inc ("B. B. Kitchen"). B. B. Kitchen operated a "Tex-Mex" restaurant in Faneuil Hall in Boston named "Zuma Tex-Mex Grill."

10.     In 2007 Azumi, Ltd. brought a challenge to B. B. Kitchen's ownership of the ZUMA trademark.  L&F (then known as Lott & Friedland) represented Azumi, Ltd. in connection with the proceedings and transactions challenging B. B. Kitchen's ownership of the ZUMA trademark.

11. Azumi, Ltd.'s challenge to B. B. Kitchen's ownership of the ZUMA trademark was not successful and hence negotiations commenced between Azumi, Ltd. and B. B. Kitchen. In these negotiations, Azumi, Ltd. sought an agreement that would allow it to acquire the trademark and also to license the trademark to B. B. Kitchen in a suitable manner.

12. In connection with the negotiations, B. B. Kitchen was represented by William Wright of the law firm of Epstein Drangel LLP, located in New York City. On August 9, 2007 Mr. Wright sent a letter to Lauren Bercuson, a lawyer at L&F representing Azumi, Ltd. *See* August 9, 2007, letter attached as Exhibit A hereto.

13. In his August 9, 2007 letter Mr. Wright made it clear that a necessary condition to any agreement was that an undertaking would be made by Azumi, Ltd. "not to open any restaurant with the name Zuma as or as part of a trade name or service mark in the New England area."

14. On August 21, 2007 Ms. Bercuson responded, on behalf of Azumi, Ltd., to Mr. Wright, stating that her client "agrees not to operate in the New England area, specifically . . . Massachusetts . . . ." She further noted that the parties would then negotiate a settlement agreement and a license agreement, based upon the stated premise of Azumi, Ltd. not operating a Zuma restaurant in New England. Leslie Lott was copied on Ms. Bercuson's email to Mr. Wright. *See* August 21, 2007 letter attached as Exhibit B hereto.

15. Over the next few months L&F continued to represent Azumi, Ltd. in negotiating a settlement and license with B. B. Kitchen.

16. On January 18, 2008 Azumi, Ltd. and B. B. Kitchen executed two separate agreements giving effect to their arrangement. These were known as the "Settlement Agreement" and the "License Agreement." *See* Exhibits C and D hereto.

17. The executed version of the Settlement Agreement contains a provision entitled "Restraint" which states:

> Subject to B. B. KITCHEN's compliance with this Agreement and with the License Agreement, AZUMI agrees to refrain from opening any restaurant incorporating the term **ZUMA** or any mark confusingly similar thereto as part of a trade name, trademark, or service mark within the Licensed Territory as defined by the License Agreement, for so long as B. B. KITCHEN operates a restaurant or sells food products in the Licensed Territory under the License Agreement.

18. The License Agreement defines the Licensed Territory as the six New England states. Massachusetts, and hence the City of Boston, are therefore part of the "Licensed Territory" as described in the Settlement Agreement.

19. As such, Azumi, represented by L&F, agreed in the Settlement Agreement that it would not operate a restaurant incorporating the name Zuma (or anything confusingly similar) in Boston for as long as B. B. Kitchen operated a restaurant in Boston. From the execution of the Settlement Agreement in January 2008, L&F knew of the existence of this provision.

20. The License Agreement, also negotiated by L&F on behalf of Azumi, Ltd., was executed concurrently with the Settlement Agreement. The License Agreement contained the following provision:

> AZUMI undertakes not to use **ZUMA** nor license a third party to use **ZUMA** as or as part of a trademark, service mark, or any other designation for Tex-Mex restaurant services and/or food products specifically of a Tex-Mex nature.

21. The License Agreement itself, however, contained no express provision in which Azumi, Ltd. agreed to refrain from opening a Zuma restaurant in Boston, so long as B. B. Kitchen operated a restaurant in Boston.

22.     Under the License Agreement with B. B. Kitchen, Azumi, Ltd. also had the right to make annual inspections of the operation of Zuma Tex-Mex to ensure it operated in a manner consistent with maintenance of the ZUMA trademark.

23.     In its representation of Azumi, Ltd. and Azumi LLC, in resolving trademark issues in the Commonwealth of Massachusetts with a Massachusetts-based business specifically regarding its client's right to operate in Massachusetts, L&F purposefully availed itself of the privileges of doing business in the Commonwealth.  L&F's advice pertained to matters occurring in Massachusetts, and both its advice in 2007 and 2008, as well as its advice in 2018 and 2019, which will be described below, focused on activities occurring entirely in Massachusetts.

*Azumi, Ltd. Endeavors to Open a Zuma Restaurant in Boston*

24.     Plaintiff Azumi LLC was organized in 2017 to operate one of Azumi, Ltd.'s Zuma restaurants in Boston and since 2019 has operated its business from One Dalton Street in Boston.

25.     In 2017 Azumi, Ltd. determined to open a Zuma brand restaurant in Boston and began preparations to open such a restaurant.  Among the steps taken, Azumi, Ltd. proceeded with negotiations for appropriate space in a Four Seasons Hotel to be included in a newly constructed 61-story tower in the Back Bay area of Boston, known as One Dalton Street.

26.     By August of 2017, Azumi LLC had been formed and was in the final stages of negotiations with One Dalton, LLC for the lease of premises for the Boston Zuma at the One Dalton Tower.

27.     On August 10, 2017 Marion Brown, an employee of Azumi, Ltd. located in London, who was responsible in part for arranging the annual inspection of Zuma Tex-Mex Grill in Boston, recalled that the 2008 arrangement existed and undertook to inquire of L&F as to

how, if at all, opening a Zuma in Boston would affect the pre-existing arrangement with B. B. Kitchen.

28. By this point in 2017, Azumi, Ltd's management team consisted of entirely different personnel than the team from 2008.

29. On August 10, 2017 Ms. Brown sent an email to Neda Lajevardi, a partner at L&F who routinely and frequently provided legal representation to Azumi on licensing and trademark matters and said "[w]e are going to be opening a Zuma in Boston. How does this affect our standing with the Tex Mex place in Boston?" *See* Exhibit E hereto.

30. On August 11, 2017 Ms. Lajevardi sent a reply email to Ms. Brown. Ms. Lajevardi informed Ms. Brown that she had reviewed the B. B. Kitchen License Agreement and concluded it contained nothing that prevented Azumi from opening a Zuma restaurant in Boston as long as such restaurant was not to be a Tex-Mex restaurant. Ms. Lajevardi also stated she would "run this by Leslie as well to be sure that she agrees." *See* Exhibit E hereto. "Leslie" was a reference to Leslie Lott, who was copied on Ms. Lajevardi's reply email to Ms. Brown.

31. In rendering advice in the August 11, 2017 email, Ms. Lajevardi had reviewed only the License Agreement and had failed to find or review the concurrently executed Settlement Agreement. The Settlement Agreement contained a prohibition upon Azumi, Ltd. opening a Zuma in Boston and, hence, Ms. Lajevardi's advice was in error, as a direct result of her failure to review both Agreements.

32. Ms. Lajevardi and Ms. Brown continued to communicate by e-mail over the following days. Leslie Lott was copied on this string of correspondence. This exchange culminated in an e-mail sent on August 19, 2017 by Ms. Lajevardi to Ms. Brown in which she stated she had spoken to Ms. Lott and that Ms. Lott agreed there was nothing in the License

Agreement preventing Azumi from opening a Zuma in Boston, except that the restaurant could not be a Tex-Mex restaurant. Ms. Lott also agreed with Ms. Lajevardi's advice that Azumi was not obliged to inform B. B. Kitchen of its plans to open a Zuma in Boston but should do so as a courtesy. Ms. Lajevardi also suggested there might be "implications" to opening a Zuma that could create "confusion" with Zuma Tex-Mex and this issue needed to be discussed. *See* Exhibit E hereto.

33. Neither Ms. Lajevardi nor Ms. Lott made a diligent and thorough search of the files of L&F to find the relevant Agreement. Hence, they both failed to find the Settlement Agreement which contained the prohibition upon Azumi, Ltd. opening a Zuma restaurant in Boston. The Settlement Agreement was in the files of L&F and both Ms. Lajevardi and Ms. Lott failed to exercise reasonable care by failing to conduct a careful search of L&F's files; by failing to find and review the Settlement Agreement; and by giving incorrect legal advice to Azumi, Ltd. regarding its obligations in connection with opening a Zuma restaurant in Boston.

34. Azumi relied upon the legal advice of Ms. Lajevardi, Ms. Lott and L&F and proceeded to execute an Indenture of Lease with One Dalton Tower, LLC for space for the operation of a Zuma restaurant, effective as of August 17, 2017. *See* Exhibit F hereto.

35. At all relevant times L&F continued to advise Azumi, Ltd. regarding its rights under the License Agreement, including regarding Azumi's rights to review the operations of Zuma Tex-Mex Grill. L&F also arranged for and managed these inspections. In late 2017, while arranging for such an inspection, L&F, having advised Azumi it should inform B. B. Kitchen of its plans for a Zuma in Boston, included a sentence so informing Mr. Cody Baker, the principal of B. B. Kitchen.

36. On December 22, 2017 Ms. Brown sent an e-mail to Ms. Lajevardi requesting an "updated schedule" on all trademarks and a "list of all third-party agreements we have with the likes of Tex Mex, etc.?" Ms. Brown requested that the information be provided ideally that day or, failing that, in a matter of a few days. Ms. Lajevardi responded she could provide the information in a week.

37. On December 27, 2017 Ms. Lajevardi provided a list of "third party agreements" as requested. The list describes the January 18, 2008 License Agreement with B. B. Kitchen. The list does not mention or include the Settlement Agreement with B. B. Kitchen.

38. In November 2018, Azumi inspected Zuma Tex-Mex Grill and had concerns about the poor quality of the operations; especially its signage. In connection therewith, on November 22, 2018 Ms. Brown sent an e-mail to Ms. Lajevardi with a series of questions regarding various trademark matters. Among the concerns raised were concerns with the poor quality of operations at the Zuma Tex-Mex Grill. The e-mail asked a series of questions regarding Azumi's rights regarding B. B. Kitchen, including relating to "our impending opening" of the Boston Zuma.

39. Later, on November 22, 2018 Ms. Lajevardi, in oblique language, seemed to promise a response after the pending Thanksgiving holiday.

40. L&F, however, failed to communicate at all with Azumi regarding B. B. Kitchen or the operation of Zuma Tex-Mex Grill for three weeks.

41. On December 14, 2018, Ms. Lajevardi sent an e-mail to Ms. Brown stating she had "not forgotten" the earlier e-mails and that she would get back to Ms. Brown "shortly." Ms. Lajevardi further stated, "There are some things I would like to discuss with Leslie."

42. In fact, at or near this time in late 2018, Ms. Lajevardi and L&F had conducted a search and had found in their files the 2008 Settlement Agreement. Ms. Lajevardi and L&F then reviewed the Settlement Agreement and realized that it prohibited Azumi from opening a Zuma in Boston. Then, as a result, L&F realized that it had given incorrect legal advice, upon which Azumi had relied to its detriment. L&F then set about to plan its strategy to protect its interests and declined to tell Azumi of L&F's mistake and of the likely consequences to Azumi.

43. After the December 14, 2018 e-mail, L&F remained silent on this matter, declining to discuss B. B. Kitchen or Zuma Tex-Mex Grill for a period of approximately forty-five (45) days. During this time, L&F continued to plan its strategy to protect its interests against Azumi, in light of the incorrect legal advice it had rendered to Azumi and Azumi's reliance thereon.

44. On February 1, 2019, Ms. Lajevardi sent an e-mail to Ms. Brown entitled "IMP'T – Zuma Restaurant Opening in Boston," with the note "Importance – High."

45. In the February 1, 2019 e-mail, Ms. Lajevardi noted she had "dug back into our files" and had learned the License Agreement "evolved out of a Settlement" with B. B. Kitchen. She then explained she had "located the original Settlement Agreement" and had "found an inconsistency" between the Settlement Agreement and the License Agreement.

46. Both the License Agreement and Settlement Agreement were drafted by L&F and were executed by Azumi, Ltd. in 2008 on the advice of L&F.

47. L&F addressed a number of issues in the February 1, 2019 e-mail, and then noted that Azumi needed "to seriously take into consideration" the "inconsistency" "as your company had agreed not to open a Zuma restaurant in . . . Boston." L&F did this to obscure the significance of its prior bad advice, erroneously opining that Azumi could open in Boston.

48. In effect, L&F in its February 1, 2019 e-mail admitted that it had negotiated an Agreement in which (in its view) Azumi agreed not to open a Zuma restaurant in Boston, yet L&F, having failed to review the key Agreement, had advised Azumi it was free to open a Zuma restaurant in Boston.

49. L&F, in the February 1, 2019 e-mail, then purported to advise Azumi as to its various options, all of which involved incurring economic cost or changing the name from the Zuma brand. In so doing, L&F specifically assumed the language of the License Agreement took precedence over the language of the Settlement Agreement.

50. As of February 1, 2019, L&F did not acknowledge its mistake but advocated that Azumi simply accept the economic consequences of the mistake.

51. By e-mail from Ms. Brown to Ms. Lajevardi of February 5, 2019 Azumi expressed its "concern" about L&F's advice and the fact that Agreements drafted by L&F were "inconsistent" and that their inconsistency was possibly the source of economic harm.

52. On February 14, 2019, a telephone call was held between Azumi, L&F and lawyers from Meister Seelig ("MS"), a New York-based firm that represented Azumi in a wide variety of matters.

53. During the February 14, 2019 telephone call, the two law firms discussed the legal question at hand regarding the "inconsistency" between the License Agreement (which, by its terms, only limited Azumi from operating a "Zuma" Tex-Mex cuisine restaurant) and the Settlement Agreement (which, by its terms, stated that Azumi would not operate a "Zuma" restaurant in New England).

54. By the time of the February 14, 2019 telephone call, and in all likelihood for some time previously, L&F had known of e-mail letters between itself and B. B. Kitchen's counsel

exchanged in 2007 which made the parties' intent clear. As noted, the first was sent on August 9, 2007 by B. B. Kitchen's counsel, rejecting L&F's proposals and insisting on the following term:

> Azumi Limited undertakes not to open any restaurant with the name ZUMA as or as part of a trade name or service mark in the New England area.

*See* Exhibit A hereto. The second was sent on August 21, 2007, where Ms. Bercuson of L&F agreed on Azumi's behalf to a payment of $125,000 for an assignment of the ZUMA Trademark registration and said:

> "[F]urther, our client agrees not to operate in the New England area, specifically, Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont."

*See* Exhibit B hereto. (Together the "August 2007 Letters.")

55. As of February 14, 2019, the August 2007 Letters, which clearly state the intent of the parties in entering into the Settlement and License Agreements, were in the possession of L&F, but were not in the possession of Azumi or MS.

56. Reviewing the August 2007 Letters made it plain that L&F had committed negligence in advising Azumi in 2017 that it could open a Zuma restaurant in Boston.

57. As of the February 14, 2019 telephone call these facts were known to L&F but were not known to Azumi and MS as a result of L&F's deliberate concealment.

58. L&F willfully, purposefully and with a deceitful intent, failed to disclose the August 2007 Letters either before or at the time of the February 14, 2019 telephone call. L&F took these actions to obscure its negligence in the hope that Azumi would take its advice and reach a prompt economic settlement with B. B. Kitchen.

59. While knowing of the existence of the August 2007 Letters, L&F, on the February 14, 2019 telephone call and otherwise, heard the advice given by MS to Azumi (to

litigate the matter in the hope of overriding the Settlement Agreement). L&F knew that in light of the August 2007 Letters there was no realistic possibility that MS's advice would prove to be successful, and nonetheless, L&F still failed and refused to make the letters known to Azumi and MS.

60. L&F failed and refused to disclose the August 2007 Letters at this time solely to protect its own interests.

61. On the February 14, 2019 telephone call, L&F did not explain the basis for its legal views, stating in substance only that they "differed" from the views of MS. This vagueness was a ploy to prevent candid disclosure, including disclosure of the contents of the August 2007 Letters, which would in turn make L&F's negligence clear.

62. After the February 14, 2019 telephone call, L&F continued to fail and refused to provide the August 2007 Letters to either Azumi or MS.

### B. B. Kitchen Learns of the Boston Zuma and Enforces Its Rights

63. In late May 2019, Leslie Lott received a letter from an Ashley Sands of Epstein & Drangel, sent on behalf of B. B. Kitchen, in which Ms. Sands asserted that Azumi was in breach of the Settlement Agreement by virtue of opening a Zuma restaurant in Boston (the "Breach Notice").

64. Ms. Lott neglected to immediately forward the Breach Notice, only doing so four days after receipt. Ms. Lott reiterated her advice that Azumi should negotiate a settlement with B. B. Kitchen. In so doing, Ms. Lott did not provide Azumi with copies of the August 2007 Letters, nor otherwise explain their existence. Instead, Ms. Lott allowed Azumi and MS to continue moving forward in the belief they had a good faith, valid argument to operate the Zuma in Boston.

65. On May 30, 2019 Simon Drysdale of Azumi sent an e-mail to Ms. Lott, informing her that a Jeffrey Weingart of MS would coordinate Azumi's response to the Breach Notice. Mr. Drysdale also requested that Ms. Lott "kindly supply a copy of your hard copy and electronic files on this matter to [Mr. Weingart]."

66. Then, in his May 30, 2019 e-mail to Ms. Lott, Mr. Drysdale said:

> "In particular, Jeff is interested in redlined drafts of the Agreements <u>and correspondence between yourselves and Epstein Drangel as the Agreements were developed so that he can understand how the contradictory clauses came about</u>." (emphasis supplied).

67. Mr. Drysdale's request directly encompassed the August 2007 Letters. Yet, despite the urgency of the situation, Ms. Lott and L&F continued to withhold those documents, failing and refusing to produce them to Azumi until June 7, 2019. L&F only forwarded the August 2007 Letters to Azumi after disclosure of the documents by B. B. Kitchen's attorneys on June 5, 2019. Ms. Lott and L&F delayed solely to protect their economic interests at the expense of their long-time client.

68. On June 4, 2019, with Azumi not having received any documents from L&F, Mr. Drysdale asked Ms. Lott for an update. Ms. Lajevardi noted it was taking time because they were searching archived files, and further represented they had sent all prior drafts and redlines of the Agreements.

69. Neither Ms. Lott, Ms. Lajevardi, nor anyone else at L&F provided Mr. Drysdale, Azumi nor MS with copies of the August 2007 Letters in response to his direct requests of May 30 and June 4, 2019.

70. On June 5, 2019 Ms. Sands, representing B. B. Kitchen, sent a further e-mail communication to MS, setting out legal arguments in support of the Breach Notice. Ms. Sands attached to her communication the second of the August 2007 Letters, the August 21, 2007 e-

mail from L&F, setting out Azumi's willingness not to open a Zuma restaurant in Boston. Ms. Sands also attached an e-mail from her firm of that date accepting the offer of settlement. This was the first time that MS or Azumi saw these communications, inasmuch as up until that point they had been withheld by L&F.

71. On June 4, 2019 MS, however, had sent to Ms. Sands a response to the Breach Notice categorically rejecting the position of B. B. Kitchen and asserted that the governing provision was Section 2 of the License Agreement requiring Azumi to refrain from opening a Tex-Mex restaurant. At the time that MS sent this letter it had not been provided with the August 2007 Letters.

72. On June 7, 2019 Ms. Lajevardi sent to Mr. Weingart a zip file with a large number of documents, which may have contained the August 2007 Letters. Ms. Lajevardi, even at this stage of the proceedings, did not highlight or call Mr. Weingart's attention to the documents.

73. The fact that from late 2018 when L&F first realized the advice it rendered in August 2017 regarding opening a Zuma in Boston had been in error, until June 7, 2019, L&F had deliberately failed to produce copies of the August 2007 Letters to Azumi or to otherwise describe the contents and import of these Letters to Azumi, impeded and prevented MS from being able to clearly and adequately advise Azumi regarding its rights and obligations and prevented Azumi from acting to protect its legitimate interests.

74. On June 25, 2019 B. B. Kitchen filed a Complaint in Suffolk Superior Court in Boston, asserting claims against Azumi for breach of contract, breach of the implied covenant of good faith and fair dealing and breach of Massachusetts General Laws, Chapter 93A.

75. Along with the Complaint, B. B. Kitchen filed a Motion for a Preliminary Injunction, seeking to order Azumi to cease operating the Zuma restaurant at One Dalton Street in Boston.

76. In support of the Motion for a Preliminary Injunction, B. B. Kitchen filed an Affidavit of William Wright, its counsel in 2007, recounting the negotiations of the Settlement and License Agreements in 2007.

77. Exhibits A and B to Mr. Wright's Affidavit were the August 9 and August 21, 2007 e-mail letters (the August 2007 Letters) which were offered to prove that the intent of the parties in entering into the Settlement and License Agreements was that Azumi would not operate a Zuma restaurant in Boston while B. B. Kitchen was operating Zuma Tex-Mex Grill.

78. L&F withheld the August 2007 Letters in order to prevent Azumi and MS from realizing the full extent and effect of its negligent failures, including its failure to review the critical Settlement Agreement when advising Azumi, Ltd. that it was able to open and operate a Zuma restaurant in Boston.  In so doing, L&F misled Azumi and deliberately prejudiced Azumi's and MS's ability to deal with the claims of B. B. Kitchen that Azumi had breached the 2007 Agreements.

79. On July 9, 2019 the Suffolk Superior Court held a hearing upon B. B. Kitchen's Motion for a Preliminary Injunction.  The Court, at the hearing, made express reference to the August 2007 Letters in finding that there was no ambiguity in the Settlement and License Agreements.

80. After the hearing, the Suffolk Superior Court ordered that effective August 9, 2019, Azumi was enjoined from operating any restaurant incorporating the name ZUMA, or any similarly confusing mark in the Licensed Territory, which included Boston.

81. Thereafter Azumi, Ltd. and Azumi LLC sought and received from the Court a fifteen (15) day extension of the time period until which the Preliminary Injunction was to take effect (until August 24, 2019).

82. After entry of the Preliminary Injunction, Azumi and B. B. Kitchen negotiated regarding a settlement in the form of a monetary payment to B. B. Kitchen, in consideration of the dissolution of the Preliminary Injunction, dismissal of the pending action and clarification of the parties' rights to the ZUMA trademark allowing Azumi to operate its Zuma restaurant in Boston. During this time period, L&F continued to obstruct the release of information to Azumi.

83. On August 16, 2019, Azumi and B. B. Kitchen entered into an agreement pursuant to which Azumi paid a substantial sum to B. B. Kitchen in consideration of the dissolution of the Preliminary Injunction, the dismissal of the action filed by B. B. Kitchen, the termination of the preexisting License Agreement and Settlement Agreement, and the clarification of the parties' rights to the ZUMA and Zuma Tex-Mex trademarks.

## COUNT I
**(Negligence/Malpractice)**

84. Azumi, Ltd. and Azumi LLC hereby reallege and incorporate herein the allegations of paragraphs 1-83.

85. L&F owed a duty of care to Azumi, Ltd. and Azumi LLC to exercise the care, skill and diligence expected from a member of the legal profession.

86. L&F failed to exercise the care, skill and diligence required of a member of the legal profession by (a) drafting inconsistent agreements failing to state clearly Azumi's rights and obligations; (b) when inquired of as to those rights and obligations, failing to find and review all necessary agreements; (c) advising Azumi incorrectly as to its rights and obligations; (d) attempting to conceal the significance of the mistaken advice and withholding critical documents

necessary for Azumi to address the previous mistaken advice; and (e) seeking to protect its own interests at the expense of the client's interests.

87. Azumi has been substantially damaged as a result of L&F's negligence by the payment of a substantial sum to B. B. Kitchen shortly after arriving at the August 16, 2019 settlement and by the incurrence of other related costs.

## COUNT II
### (Breach of Fiduciary Duty)

88. Azumi, Ltd. and Azumi LLC hereby reallege and incorporate herein the allegations of paragraphs 1-87.

89. L&F, as legal counsel to Azumi, Ltd. and Azumi LLC owed both entities a fiduciary duty, as the relationship between attorney and client is a fiduciary relationship as a matter of law. L&F, as such, owed Azumi, Ltd. and Azumi LLC a duty of the utmost good faith and loyalty.

90. L&F breached its fiduciary duty to Azumi, Ltd. and Azumi LLC by actively seeking to conceal its prior legal malpractice (where it informed Azumi it could open a Zuma restaurant in Boston); by failing to disclose the August 2007 Letters, these being the critical documents explaining the operative Settlement and License Agreements; and taking active steps to conceal those documents from Azumi, Ltd. and Azumi LLC; and by doing so for the sole purpose of obscuring the significance and effect of its earlier mistake in informing Azumi it was entitled to open a Zuma restaurant in Boston.

91. Azumi, Ltd. and Azumi LLC have been substantially damaged by L&F's breach of its fiduciary duty.

WHEREFORE, Azumi, Ltd. and Azumi LLC, hereby request this Court grant the following relief:

1. Enter judgment against L&F and in favor of Azumi LLC and Azumi, Ltd. for all damages caused by L&F's negligence and breach of fiduciary duty, with statutory interest and costs; and

2. Grant such other and further relief as is just and proper.

                AZUMI LLC and AZUMI, LTD

                By their attorneys,

                */s/ Stephen J. Brake*
                Stephen J. Brake (BBO# 546972)
                *sbrake@nutter.com*
                Sarah P. Kelly (BBO# 664267)
                *skelly@nutter.com*
                Gabriel I. Rossman (BBO# 699096)
                *grossman@nutter.com*
                Nutter, McClennen & Fish, LLP
                Seaport West
                155 Seaport Boulevard
                Boston, MA 02210
                Telephone: (617) 439-2000
                Facsimile: (617) 310-9000

Dated: August 12, 2021

## JURY DEMAND

Azumi LLC and Azumi, Ltd. hereby demand a trial by jury of all claims so triable.

                        AZUMI LLC and AZUMI, LTD

                        By their attorneys,

                        */s/ Stephen J. Brake*
                        Stephen J. Brake (BBO# 546972)
                        *sbrake@nutter.com*
                        Sarah P. Kelly (BBO# 664267)
                        *skelly@nutter.com*
                        Gabriel I. Rossman (BBO# 699096)
                        *grossman@nutter.com*
                        Nutter, McClennen & Fish, LLP
                        Seaport West
                        155 Seaport Boulevard
                        Boston, MA 02210
                        Telephone: (617) 439-2000
                        Facsimile: (617) 310-9000

5249157