**United States District Court**
**District of Massachusetts**

```
_____
                              )
Azumi LLC et al.,             )
                              )
          Plaintiffs,         )
                              )
     v.                       )
                              )     Civil Action No.
Lott & Fischer, PL,           )     21-11311-NMG
                              )
          Defendant.          )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises from alleged legal malpractice committed by defendant law firm Lott & Fischer, PL ("L&F" or "defendant"). Pending before the Court is L&F's motion to dismiss the complaint for lack of personal jurisdiction (Docket No. 10). For the reasons that follow, the Court concludes that it cannot exercise personal jurisdiction over L&F. Rather than dismiss the action, however, the Court will transfer it to the United States District Court for the Southern District of Florida.

I.   **Background**

**A. The Parties**

Plaintiff Azumi, Ltd. is a foreign company organized under the laws of England and Wales with a principal place of business in London, England. It operates a global brand of upscale modern Japanese restaurants under the brand name "Zuma".

Plaintiff Azumi LLC (together with Azumi, Ltd., "plaintiffs" or "the Azumi entities") is a Massachusetts limited liability company.  Its sole member is Azumi, Ltd. and its principal place of business is in the Commonwealth.  It was organized in 2017 to operate a Zuma restaurant in Boston, Massachusetts.

Defendant L&F is a law firm specializing in intellectual property and a Florida professional limited liability company with its principal place of business in Coral Gables, Florida.  L&F avers that none of its attorneys resides or regularly works outside of Florida.

### B. Factual and Procedural History

In 2007, L&F represented plaintiff Azumi, Ltd. in a trademark dispute with a third party, B.B. Kitchen, Inc. ("B.B. Kitchen").  The dispute, which was heard by the Trademark Trial and Appeal Board in Alexandria, Virginia, concerned a challenge brought by Azumi, Ltd. to B.B. Kitchen's ownership of the "Zuma" trademark which both Azumi, Ltd. and B.B. Kitchen used in the names of their respective restaurants.  B.B. Kitchen's restaurant, which it continues to operate, is named "Zuma Tex-Mex Grill" and is located in Boston, Massachusetts.

Although Azumi, Ltd.'s challenge was unsuccessful, the parties eventually agreed to a settlement whereby B.B. Kitchen transferred the "Zuma" mark to Azumi, Ltd. ("the Settlement Agreement") and Azumi, Ltd., in turn, licensed the mark to B.B.

Kitchen for exclusive use in New England ("the License Agreement").  In addition to the provisions concerning use of the mark, the License Agreement afforded Azumi, Ltd. the right to make annual inspections of Zuma Tex-Mex Grill to ensure that it operated in a manner "consistent with the maintenance of the ZUMA trademark."  L&F contends that it hired an independent consultant based in Connecticut to conduct those inspections and reported the results to Azumi, Ltd.

Approximately a decade later, an Azumi, Ltd. employee inquired of L&F about whether it could open a Zuma-branded restaurant in Boston ("Zuma Boston") without violating its obligations to B.B. Kitchen.  An L&F attorney allegedly advised that, based upon her review of the License Agreement, there was no restriction to opening Zuma Boston.

The Settlement Agreement did, however, preclude Azumi from doing just that and, shortly after Zuma Boston opened, B.B. Kitchen sued the Azumi entities in the Massachusetts Superior Court for Suffolk County for breach of the Settlement and License Agreements.  In the course of that litigation, B.B. Kitchen obtained an injunction preventing the Azumi entities from using the "Zuma" mark in Boston.  Plaintiffs submit that, faced with an injunction and having already opened their restaurant in Boston, they had no choice but to settle the litigation with B.B. Kitchen at substantial expense.

Thereafter, the Azumi entities, dissatisfied with the legal advice they had received from L&F, commenced this action.  In addition to the facts recited above, plaintiffs argue that, after erroneously advising them that they could open Zuma Boston consistent with their obligations to B.B. Kitchen, L&F engaged in a prolonged and concerted effort to conceal its unsound advice.  They assert claims against L&F for 1) legal malpractice in the inconsistent drafting of the Settlement and License Agreements and the erroneous advice rendered to Azumi, Ltd. ("Count I") and 2) breach of fiduciary duty by virtue of L&F's cover-up of that malpractice ("Count II").

L&F denies any such wrongdoing and has moved to dismiss the complaint.  It contends that this Court does not have personal jurisdiction over it consistent with the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## II.  Motion to Dismiss

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of showing that the court has personal jurisdiction over defendant. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).  Where, as here, the motion is decided without first holding an evidentiary hearing,

the Court applies the "prima facie" standard of review and takes plaintiffs'

> properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiffs'] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot rely, however, on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate that jurisdiction exists." Id. (internal citations omitted); see Vapotherm, Inc. v. Santiago, 38 F.4th 252, 2022 U.S. App. LEXIS 17786, at *6 (1st Cir. June 28, 2022).

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009). As such, this Court must determine whether the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution and the Massachusetts long-arm statute. Id. The two are not coextensive: rather, the Massachusetts long-arm statute imposes limits upon the exercise of jurisdiction more restrictive than the demands of constitutional due process. SCVNGR, Inc. v. Punchh, Inc., 83 N.E.3d 50, 52 (Mass. 2017).

The Massachusetts Supreme Judicial Court ("the SJC") has instructed that, in order to avoid unnecessary consideration of constitutional questions, the personal jurisdiction inquiry

commences with consideration of the long-arm statute. Mojtabai
v. Mojtabai, 4 F.4th 77, 85 (1st Cir. 2021) (citing SCVNGR,
Inc., 85 N.E.3d at 52); see Duggan v. Martorello, No. 18-12277-
JGD, 2022 U.S. Dist. LEXIS 58075, at *30 n.5 (D. Mass. Mar. 30,
2022) (explaining that "unless a challenge under the long-arm
statute has been waived, it is necessary to determine whether
jurisdiction is appropriate under that statute before engaging
in a constitutional analysis").  Only if the statutory
requirements are satisfied should the court consider whether its
exercise of jurisdiction is permitted by the Constitution.
SCVNGR, Inc., 85 N.E.3d at 56; see Exxon Mobil Corp. v. Attorney
General, 94 N.E.3d 786, 792 n.3 (Mass. 2018).

     **1. Application**

     The Massachusetts long-arm statute sets forth eight grounds
upon which jurisdiction may be based. M.G.L. c. 223A, § 3(a)-
(h).  Subsection 3(a), upon which the plaintiffs rely, provides
for the exercise of jurisdiction over a defendant when the cause
of action at issue arises from its transaction of business in
the Commonwealth. M.G.L. c. 223A, § 3(a); see SCVNGR, Inc., 85
N.E.3d at 55.  Accordingly, to establish jurisdiction under
§ 3(a), plaintiff must allege facts which satisfy two
requirements: 1) that defendant transacted business in
Massachusetts and 2) that the claims at issue arose from that
transaction of business. Exxon Mobil Corp., 94 N.E.3d at 793.

Neither condition is met here.  Although the transacting-
business requirement is construed broadly, Tatro v. Manor Care,
635 N.E.2d 549, 551 (Mass. 1994), it nevertheless imposes real
limitations, see Lacy v. Jublia Pte LTD., No. 20-P-1319, 2022
Mass. App. Unpub. LEXIS 230, at *7 (Mass. App. Ct. Apr. 1, 2022)
(collecting cases), which L&F's limited in-forum activity fails
to meet.  The Azumi entities proffer a myriad of actions
purportedly connecting L&F to Massachusetts, including 1) its
international legal practice, 2) its representation of Azumi,
Ltd. in the 2007 trademark dispute which included service of
pleadings upon B.B. Kitchen in Massachusetts, 3) a forum
selection clause in the settlement documents, 4) the annual
inspections of Zuma Tex-Mex that L&F arranged and 5) advice
rendered about the right of the Azumi entities to open a Zuma-
branded restaurant in Boston.  None of those purported
connections affords jurisdiction.  There is no evidence that L&F
regularly advised clients in Massachusetts and, in any event,
Azumi, Ltd. was not one such client.  The trademark dispute took
place in Virginia and the settlement was negotiated between L&F
attorneys in Florida and B.B. Kitchen counsel located in New
York, not Massachusetts.  Nor did the resulting agreements
contain any reference to Massachusetts beyond 1) the fact that
Zuma Tex-Mex was located there and 2) the prohibition upon Azumi
opening a restaurant in New England.  Although the inspections

-7-

of Zuma Tex-Mex did occur in Boston, L&F hired a Connecticut-
based contractor to perform them.

Under such circumstances, the Court cannot conclude that
L&F participated in the "economic life" of the Commonwealth. See
Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291
(D. Mass. 2017) (finding transacting-business requirement met
where, inter alia, defendant had $20 million worth of in-forum
sales, had sales representative in forum and was registered to
do business there).

In any event, even if those connections were sufficient to
constitute the transaction of business in Massachusetts,
jurisdiction would not lie because the claims here at issue do
not arise from the alleged in-forum activity. Exxon Mobil Corp.,
94 N.E.3d at 793.  A claim arises from a defendant's transaction
of business if it "was made possible by [it], or lies in [its]
wake". Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d
287, 291 (D. Mass. 2017).  Put differently, the "arising from"
inquiry asks whether the defendant's contacts with the forum
"constitute the first step in a train of events" leading to the
injury. Id.

Here, the plaintiffs' claims do not arise from L&F's
purported connections to Massachusetts.  The negligence and
malpractice alleged by plaintiffs in Count I concerns the
purported failure of L&F 1) to draft consistent Settlement and

License Agreements, 2) to search for and review those agreements adequately, 3) to advise plaintiffs correctly about their legal import and 4) to advise plaintiffs timely of mistaken advice. While some of L&F's purported forum contacts concern, as a general matter, the disputed trademark, none of them has any causal relation to the alleged malpractice here at issue. Rather, the operative allegations arise either from conduct that occurred wholly in Florida or advice that was rendered from Florida and received in London. See B2 Opportunity Fund, LLC v. Trabelsi, No. 17-10043-RGS, 2017 U.S. Dist. LEXIS 137544, at *12-14 (D. Mass. Aug. 28, 2017) (citing Sawtelle v. Farrell, 70 F.3d 1381 (1st Cir. 1995)).

The allegations in Count II with respect to an alleged breach of fiduciary duty arising from the failure of L&F to disclose its erroneous legal advice are derivative of the alleged malpractice itself and similarly lack any causal connection to business allegedly transacted by defendant in Massachusetts. See Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 291 (1st Cir. 1999) ("A breach of fiduciary duty occurs where the fiduciary acts disloyally.").

In sum, the Massachusetts long-arm statute does not permit the exercise of personal jurisdiction over L&F. Accordingly, the Court need not opine on whether an assertion of jurisdiction would be constitutionally sound. SCVNGR, Inc., 85 N.E.3d at 56;

see Doe v. JetBlue Airways Corp., No. 20-11623-ADB, 2021 U.S.
Dist. LEXIS 145125, at *21-22 (D. Mass. Aug. 3, 2021) (declining
to reach constitutional question where jurisdiction could not be
exercised under long-arm statute).

**V.   <u>Transfer</u>**

Because this Court lacks jurisdiction over L&F, it must
either dismiss the case, as requested by L&F, or transfer it to
the United States District Court for the Southern District of
Florida, as requested by the plaintiffs.  Under 28 U.S.C.
§ 1631,

> [w]henever a civil action is filed in a court . . . and
> that court finds that there is a want of jurisdiction, the
> court shall, if it is in the interest of justice, transfer
> such action . . .  to any other such court . . . in which
> the action . . . could have been brought at the time it was
> filed[.]

28 U.S.C. § 1631.  Section 1631 establishes a presumption in
favor of transfer which is rebutted only if the transfer is "not
in the interest of justice." <u>Fed. Home Loan Bank of Bos.</u> v.
<u>Moody's Corp.</u>, 821 F.3d 102, 119 (1st Cir. 2016) (<u>abrogated on
other grounds by</u> <u>Lightfoot</u> v. <u>Cendant Mortg. Corp.</u>, 137 S. Ct.
553 (2017)).

When determining whether a transfer is appropriate, the
Court evaluates 1) whether the action could have been brought in
another federal court, 2) whether a limitations period has run
that would preclude filing in the correct court and 3) whether

the case is frivolous or brought in bad faith. Shelton Bros.,
Inc. v. Three Pirates, LLC, No. 15-30140-MGM, 2017 WL 1227922,
at *6-7 (D. Mass. Mar. 31, 2017) (quoting Britell v. United
States, 318 F.3d 70, 74-75 (1st Cir. 2003)).

Each factor weighs in favor of transfer.  The Azumi
entities could have filed this action in the Southern District
of Florida, where the advice giving rise to this malpractice
claim was rendered.  Plaintiffs contend that L&F has alluded to
a statute of limitations defense which, if successful, would
preclude their claims.  Finally, there is no evidence that
plaintiffs brought their claims in bad faith, nor does L&F make
any such allegation.  For those reasons, and because the Court
is satisfied that transfer is in the interest of justice, this
case will be transferred to the Southern District of Florida.

<u>**ORDER**</u>

In accordance with the foregoing, defendant's motion to dismiss for lack of personal jurisdiction in this Court (Docket No. 10) is **DENIED** but plaintiffs' action is hereby **TRANSFERRED** pursuant to 28 U.S.C. § 1631 to the United States District Court for the Southern District of Florida for further proceedings. **So ordered.**

                              ___/s/ Nathaniel M. Gorton___
                              Nathaniel M. Gorton
                              United States District Judge

Dated:  August 16, 2022